1    **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9    Yvonne Cummins,                    )    No. CV05-3639-PHX-NVW
                                         )
10              Plaintiff,               )    **ORDER**
                                         )
11   vs.                                 )
                                         )
12                                       )
     Jo Anne B. Barnhart, Commissioner of)
13   Social Security,                    )
                                         )
14              Defendant.               )
                                         )
15   _____)

16        Pending before the court are cross-motions for summary judgment regarding the

17   calculation of Plaintiff's Social Security benefits. (Doc. ## 20, 28.)

18        Retirement Insurance and Disability Insurance are separate benefit programs

19   administered by the Social Security Administration ("SSA") pursuant to different eligibility

20   criteria and applicable law.  *Compare*, *e.g*., 42 U.S.C. § 402(a) (eligibility for old-age

21   insurance benefits) *with* 42 U.S.C. § 421 (eligibility for disability benefits).  A single

22   provision of the Social Security Act, however, is used to determine a claimant's actual

23   monthly benefits under both programs.  42 U.S.C. § 415 (computation of the Primary

24   Insurance Amount ("PIA"));  20 C.F.R. § 404.204 (explaining the various PIA calculation

25   methods).  Although an individual may be concurrently eligible for both Retirement

26   Insurance Benefits ("RIB") and Disability Insurance Benefits ("DIB"), claimants may only

27   receive monthly benefits under one program, with the larger of the two monthly benefit

28   amounts being the statutory default.  20 C.F.R. § 404.407(c).

1    Plaintiff primarily contends that the Commissioner unlawfully recomputed her

2  Primary Insurance Amount when she became concurrently eligible for disability benefits and

3  old-age benefits.  Administrative Law Judge ("ALJ") Norman R. Buls determined that the

4  SSA correctly calculated Plaintiff's disability and retirement benefits under the Social

5  Security Act and applicable regulations.  (Tr. 11-13.)  The ALJ's January 20, 2005 on-the-

6  record decision was upheld  by the Appeals Council and is now the Commissioner's final

7  decision.   (Tr. 4-6.)   Plaintiff argues that the ALJ committed reversible error by

8  misinterpreting the Social Security Act and regulations and violating Plaintiff's due process

9  rights.

10    The Commissioner's decision to uphold the ALJ's ruling in full is affirmed.  The court

11  wishes to ensure that this dispute, which has endured for over four years and is grounded

12  only on misunderstanding, is conclusively and permanently resolved.

13  **I.     Background**

14    **A.     Disability Insurance Benefits**

15    Plaintiff, a retired accountant appearing *pro se*, was born on January 1, 1938.  (Doc.

16  # 8 at 2; Tr. 13.)  Unable to work, she filed an application for disability benefits with the SSA

17  in August 1998.  (Doc. # 8 at 1.)  Plaintiff alleged a disability onset date of January 28, 1998.

18  (*Id*.)  Her application for DIB was denied initially, upon reconsideration, and at the hearing

19  level.  (Tr. 11.)  Plaintiff appealed the denial of benefits to the Appeals Council, which

20  remanded to ALJ Buls for further proceedings.  (*Id*.)  In May 2001, ALJ Buls found Plaintiff

21  disabled as of January 19, 2000, instead of the earlier January 28, 1998 onset date she urged.

22  (*Id*.)  Plaintiff timely appealed the unfavorable portion of the ALJ's decision.  (Tr. 11.)

23    ALJ Bul's May 2001 ruling entitled Plaintiff to monthly disability benefits beginning

24  in July 2000, five calendar months after the onset of the disability in January 2000.   20

25  C.F.R. § 404.320(b)(4) (prescribing a five-month waiting period from the onset of the

26  disability before disability benefits will be paid).  In July 2001, Plaintiff began receiving

27  Disability Insurance Benefits in the amount of $977 per month, in addition to a one-time

28  retroactive award accounting for the DIB owed to her from July 2000, through June 2001.

(Tr. 102-08.)  These benefits were awarded on the basis of a disability Primary Insurance Amount of $943.50 reflecting the January 2000 onset date.  (*Id.*)  The difference between a PIA of $943.50 and a monthly disability benefit amount of $977 is explained by the fact that Plaintiff's DIB, like all benefits administered by the SSA, were subject to annual cost-of-living adjustments ("COLAs").  Under the Social Security Act, COLAs are applied in December of each year and paid out in January of the following year.  42 U.S.C. § 415(i)(2)(A)(ii).

On June 28, 2002, the Appeals Council reversed ALJ Bul's onset decision and adjudged Plaintiff disabled as of January 28, 1998, at which date she was 60 years old. (Tr. 11.) Plaintiff's disability Primary Insurance Amount, which was originally calculated on the basis of a January 2000 onset, needed to be adjusted to account for the earlier onset date set by the Appeals Council.  A new PIA was therefore calculated both to determine the amount of monthly DIB to which Plaintiff was entitled, and also to make a retroactive award to account for the time between July 1998, and June 2000, in which no disability payments were made.  (Tr. 131; Tr. 144-45.)

As a result of the earlier onset date, Plaintiff's disability Primary Insurance Amount was reduced from $943.50 to $910.50.  (Tr. 145.) Plaintiff was entitled to monthly Disability Insurance Benefit based on this lower PIA as of July 1998, five months after she became disabled in January 1998.  20 C.F.R. § 404.320(b)(4).  The $910.50 disability PIA was properly calculated under the Average Indexed Monthly Earning ("AIME") method, using the 1998 Eligibility Factors and an Eligibility Year of 1998–the first year in which Plaintiff was entitled to disability benefits.  42 U.S.C. § 415; 20 C.F.R. § 404.204(b)(1).  The Indexing Year, which the SSA uses to determine benefits on the basis of a national earnings average,  was appropriately determined to be 1996–two years before the year in which Plaintiff became disabled.  42 U.S.C. § 415(b)(3)(A)(ii).  The remaining aspects of the disability PIA calculation are not material to this case nor disputed by Plaintiff.  (*See* Doc. # 29 at 6-7.)

1        **B.**      **Reduced Retirement Insurance Benefits**

2        Plaintiff began to draw reduced old-age benefits as of her 62nd birthday in December,

3 1999.  Plaintiff was entitled only to reduced Retirement Insurance Benefits, and not

4 Disability Insurance Benefits, at this time because her appeal from the SSA's initial denial

5 of her disability application was still pending. (Tr. 90.)  The SSA determined Plaintiff's old-

6 age PIA to be $953.30 under the AIME method authorized by 42 U.S.C. § 415 and 20 C.F.R.

7 § 404.204(b)(1). (Tr. 12.)  The SSA appropriately used the 1999 Eligibility Factors and an

8 Eligibility Year of 1999 to determine Plaintiff's retirement Primary Insurance Amount as,

9 under the Commissioner's regulations, she is deemed to have turned 62 on December 31,

10 1999, the day before her actual birthday.  20 C.F.R. 404.102.  The Indexing Year was

11 properly determined to be 1997, the second year before Plaintiff attained age 62. 42 U.S.C.

12 § 415(b)(3)(A)(ii).  The balance of Defendant's old-age PIA calculations are not material to

13 this case nor disputed by Plaintiff. (*See* Doc. # 29 at 5-6.)

14        The selection of the Indexing Year was crucial to the calculation of both the disability

15 PIA and the old-age PIA in this case.  As shown above, the selection of the Indexing Year

16 follows logically from the threshold determination of the Eligibility Year.  The Indexing

17 Year is used to determine the average of the total wages for all workers from 1951 through

18 the claimant's Indexing Year. (Tr. 78.)  The later the Indexing Year, the larger the indexing

19 factors that the SSA applies to a claimant's actual earnings for prior years. (Tr. 192.)

20 Although Plaintiff's actual reported earnings remained constant, her retirement PIA of

21 $953.30 was higher than her disability PIA of $910.50 because Plaintiff's Indexing Year for

22 purposes of her old-age benefits, 1997, was later than her Indexing Year for purposes of her

23 disability benefits, 1996.

24        A simple example illustrates the point.  Plaintiff had $1,727.20 of actual earnings in

25 1955, the first year in which she reported wages to the SSA. (Tr. 187.)  The SSA applied an

26 index factor of 8.3072841 to those 1955 wages and determined that Plaintiff had $14,348.34

27 of indexed earnings for old-age benefit purposes in that year. (*Id*.)  For disability purposes,

28 however, an index factor of only 7.8492718 was used to set Plaintiff's 1955 indexed earnings

1   at $13,557.26. (Tr. 191.) The $791.08 difference between the two indexed earnings amounts

2   is explained by the fact that, under the Average Indexed Monthly Earning method applicable

3   here, the SSA multiplied Plaintiff's 1955 wages by a larger indexing factor to calculate her

4   retirement PIA than it did when figuring her disability PIA.  In fact, Plaintiff's indexed

5   earnings for old-age purposes were higher than the corresponding figures for disability

6   purposes for every year between 1955 and 1996.  *Compare* (Tr. 187-88) *with* (Tr. 191.)

7   Although Plaintiff vigorously contends otherwise, it would be error for the SSA to use the

8   same indexing factors that it used when figuring Plaintiff's old-age PIA to calculate

9   Plaintiff's disability benefits upon her subsequent entitlement to them.

10          Finally, it should be noted that Plaintiff's retirement PIA of $953.30 was actuarially

11   reduced to a monthly benefit of $786.30 because Plaintiff elected to receive retirement

12   benefits before attaining her full retirement age of 65.  42 U.S.C. § 415; (Tr. 189).  Plaintiff

13   was entitled to this monthly benefit amount, subject to annual COLAs, from December 1999

14   through June 2001, the last month before Plaintiff became eligible for higher monthly

15   disability benefits in the amount of $977 as discussed above. (Tr. 102-08; Tr. 189.)  Under

16   the Commissioner's regulations, claimants eligible for both Retirement Insurance Benefits

17   and Disability Insurance Benefits are entitled only to the higher of the two benefit amounts.

18   20 C.F.R. § 404.407(c).

19          **C.     Full Retirement Insurance Benefits**

20          Plaintiff's entitlement to disability benefits ended in November 2002, because she

21   attained full retirement age, 65, in December 2002.  20 C.F.R. § 404.316(b)(2) (a claimant's

22   entitlement to disability benefits ends the month before the month she attains full retirement

23   age); 20 C.F.R. 404.102 (claimant attains an age the day before her actual birthday).

24   Plaintiff's disability benefits were properly converted into full old-age benefits in December

25   2002, pursuant to 42 U.S.C. § 415(f)(9)(A). (Tr. 192.)  At that point, the actuarial reduction

26   applied to Plaintiff's old-age Primary Insurance Amount, which was triggered by Plaintiff's

27   decision to draw Retirement Insurance Benefits before age 65, was removed. Plaintiff

28   became eligible to the full retirement PIA of $953.30 as of December 2002, for this reason.

1   (Tr. 178.)   Application of the statutory COLAs to which Plaintiff was entitled from

2   December 1999, to December 2002, further increased Plaintiff's monthly retirement benefits

3   to $1,051.90. (Tr. 171; Tr. 182.)

4   **II.       Standard of Review**

5           The court has jurisdiction to review Plaintiff's timely appeal of the Commissioner's

6   final decision pursuant to 42 U.S.C. § 405(g).  The court reviews only those issues actually

7   raised by the party challenging the Commissioner's decision.  *Lewis v. Apfel*, 236 F.3d 503,

8   517 n.13 (9th Cir. 2001).  The scope of the court's review is limited:  the court may set aside

9   the Commissioner's decision only if it is not supported by substantial evidence or if it is

10  based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir.

11  1995).  "Substantial evidence is relevant evidence which, considering the record as a whole,

12  a reasonable person might accept as adequate to support a conclusion."  *Id.*   Such evidence

13  is "more than a scintilla but less than a preponderance."  *Smolen v. Chater*, 80 F.3d 1273,

14  1279 (9th Cir. 1996) (citations omitted).   As a general rule, "[w]here the evidence is

15  susceptible to more than one rational interpretation, one of which supports the ALJ's

16  decision, the ALJ's conclusion must be upheld."  *Thomas v. Barnhart*, 278 F.3d 947, 954

17  (9th Cir. 2002) (citation omitted).

18          The court has "an obligation where the petitioner is  *pro se* . . . to construe the

19  pleadings liberally and to afford the petitioner the benefit of any doubt."  *Bretz v. Kelman*,

20  773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc) (citation omitted).  This rule of liberal

21  construction is of little moment, however, when a plaintiff challenges an administrative

22  agency's application and interpretation of its own organic laws and regulations.   "The

23  interpretation of statutes and regulations by an agency charged with their administration is

24  entitled to due deference and should be accepted unless demonstrably irrational or clearly

25  contrary to the plain meaning."  *Adams v. Bowen*, 872 F.2d 926, 929 (9th Cir. 1989)

26  (citations and internal quotations omitted); *see Chevron, U.S.A. v. NRDC, Inc*., 467 U.S. 837,

27  843 (1984).

28

## III.    Discussion

### A.    Plaintiff may have both a Disability Primary Insurance Amount and a Retirement Primary Insurance Amount under the Social Security Act

Plaintiff strenuously objects to how the SSA reconciled her old-age benefits, to which she became entitled in reduced form in December 1999, with her disability benefits, for which she was eligible as of a January 2000 onset that was later back-dated to January, 1998. Specifically, Plaintiff contends that the Commissioner should have used Plaintiff's retirement Primary Insurance Amount of $953.30 to calculate her monthly disability benefits upon her subsequent, retroactive entitlement to them.  (Doc. # 20 at 5.)  For over four years, Plaintiff has disputed the Commissioner's authority to "base [her] monthly benefits on a recomputed [PIA] reduced to $910 in violation of Recomputation prohibitions, 42 U.S.C. § 415(f)(1) and (4)."  (*Id*.)  Plaintiff's assertion that the Commissioner calculated her disability benefits based on a recomputed version of her old-age PIA in violation of 42 U.S.C. § 415(f)(1) runs contrary to logic and mathematics and is not supported by applicable law.

In relevant part, 42 U.S.C. § 415(f)(1) states, "[a]fter an individual's primary insurance amount has been determined under this section, there shall be no recomputation of such individual's primary insurance amount except as provided in this section."  A brief summary of the relevant dates and benefit amounts places the SSA's interpretation of this key provision in its proper context.  Plaintiff applied for and was ultimately awarded disability benefits with an onset date of January 27, 1998.  The favorable onset determination of the Appeals Council led the SSA to calculate a final disability PIA of $910.50, which was used to calculate her monthly disability benefits from July 1998, through November 2002, the month before she reached full retirement age.  In the interim, and while her disability appeal was still pending, Plaintiff elected to draw old-age benefits before reaching full retirement age.  The resulting old-age PIA of $953.30 was actuarially reduced to yield a monthly benefit of $786.30, which Plaintiff received from December 1999 through June 2001.  Applying the rule that a Plaintiff is entitled to the higher of her two monthly benefit amounts, the SSA stopped paying Plaintiff old-age benefits and began paying her disability benefits at the rate of $977 per month in July

1    2001, as dictated by a PIA calibrated to the initial January 2000 disability onset date.
2    Plaintiff's old-age PIA of $953.30 became applicable without reduction when she turned 65
3    in December 2002.  After applying all the COLAs to which she was entitled, this PIA yielded
4    Plaintiff monthly old-age benefits of $1051.90 as of December 2002.

5           Plaintiff's overly broad interpretation of 42 U.S.C. § 415(f)(1) causes her to confuse
6    her old-age PIA of $953.30 with her disability PIA of $910.50 throughout the pleadings and
7    administrative record.   The evidence shows that Plaintiff, a retired accountant, was
8    disappointed with the SSA's responses to her requests for an "explanation of [the] amounts
9    and the laws [that Defendant] used [to] support [Defendant's] computation or recomputation."
10   (Tr. 119.)  However, the record also demonstrates that Plaintiff was told, in a variety of ways
11   and in meticulous detail, why 42 U.S.C. § 415(f)(1)'s prohibitory language does not bar the
12   SSA from awarding her disability benefits based on a disability PIA, and retirement benefits
13   based on an old-age PIA.  (*See*, *e.g.*, Tr. 186-90 ("How We Figured Your Retirement
14   Benefit") *and* Tr. 190-93 ("How We Calculated Your Disability Benefits").)

15          Disability Insurance and Retirement Insurance are distinct benefit programs designed
16   to accomplish different objectives and governed by separate sections of the United States
17   Code.  That 42 U.S.C. § 415(f)(1) applies to both programs does not mean that the first PIA
18   to be calculated becomes immutably applicable to a claimant who, like Plaintiff, subsequently
19   qualifies for a different program yielding a higher monthly benefit.  To hold that it does would
20   eviscerate the rule that claimants eligible for both Retirement and Disability Insurance
21   Benefits are entitled to the higher of the two benefit amounts, as the first PIA used to calculate
22   such monthly benefits would never change.  20 C.F.R. § 404.407(c).

23          Furthermore, Plaintiff's overly broad interpretation of 42 U.S.C. § 415(f)(1) cannot be
24   reconciled with the fact that Plaintiff's Indexing Year for old-age benefits, 1997, is later than
25   her Indexing Year for disability benefits, 1996.  Plaintiff's retirement PIA of $953.30 is higher
26   than her disability PIA of $910.50 under the Average Indexed Monthly Earning method
27   because of this one-year difference in the applicable Indexing Year.  By failing to distinguish
28   between Retirement Insurance on the one hand, and Disability Insurance on the other, Plaintiff

1   demands a windfall disability award amount derived from an old-age Primary Insurance
2   Amount that is calibrated to an Indexing Year of 1997.

3        Section 415(f)(1) of 42 U.S.C. does not support Plaintiff's contention that the full old-
4   age PIA of $953.30 should be applied to determine her monthly disability benefits simply
5   because she subsequently proved that she was in fact entitled DIB.  As the ALJ correctly
6   stated in his January 20, 2005 decision, "[t]he [Social Security] Act clearly contemplates and
7   even requires separate calculations for disability benefits versus retirement benefits." (Tr. 12.)
8   The Commissioner's decision to award Plaintiff Disability Insurance Benefits on the basis of
9   a disability PIA of $910.50 is supported by substantial evidence and is not legally erroneous.

10       **B.    Distinguishing "Recomputation" from "Recalculation"**

11       In addition to challenging the Commissioner's reliance on separate Primary Insurance
12  Amounts to calculate her retirement and disability awards, Plaintiff also contends that the
13  "plain language" of 42 U.S.C. § 415(f)(1) and (4) prohibits the SSA from recomputing
14  Plaintiff's PIA from $953.30 to $910.50.  (Doc. # 20 at 8.)   Section 415(f)(4) provides that
15  "[a] recomputation shall be effective only if it increases the primary insurance amount by at
16  least $1."   As discussed above, the Commissioner did not violate § 415(f)(1) by using
17  different PIAs to calculate Plaintiff's entitlement to Retirement Insurance and Disability
18  Insurance at different times.  Thus Plaintiff can prevail only by showing that Defendant lacked
19  authority to adjust Plaintiff's original disability PIA of $943.50, which was calculated on the
20  basis of a 2000 Eligibility Year, to a disability PIA of $910.50 reflecting the 1998 disability
21  onset that Plaintiff herself demanded.   Sections 415(f)(1) and (4) in no way limit the
22  Commissioner's authority to so modify Plaintiff's disability PIA.

23       The prohibitory language of 42 U.S.C. § 415(f)(1) means only that a PIA determination
24  for one benefit program may not be subsequently "recomputed," unless such recomputation
25  is triggered by a new computation method or is necessary to account for the posting of
26  earnings that were excluded from the initial PIA computation. 20 C.F.R. § 404.281.  Section
27  415(f)(4) provides further that, even if a recomputation is allowed, such recomputation is
28  effective only if it increases the PIA by at least $1.

1      A "recalculation," on the other hand, reopens the original PIA calculation in order to

2  change the factors applied to the benefit calculation, account for earnings incorrectly included

3  or excluded from the original PIA determination, or correct computational errors. 20 C.F.R.

4  § 404.290(a)(1)-(4).   Whereas a recomputation may only increase a claimant's PIA, a

5  recalculation may either increase or decrease a claimant's PIA. 20 C.F.R. § 404.290(b); s*ee*

6  Soc. Sec. L.P. § 24:24-37 (distinguishing PIA recomputation from PIA recalculation).

7  Plaintiff correctly notes that the recalculation concept does not appear on the face of 42

8  U.S.C. § 415, or anywhere else in the Social Security Act.   Nevertheless, the Commissioner

9  carefully distinguished a PIA "recomputation" from a PIA "recalculation" in 20 C.F.R. §

10  404.290, a regulation with the force of law.   The court must defer to the Commissioner's

11  interpretation unless it is "demonstrably irrational or clearly contrary to the plain meaning"

12  of the Social Security Act. *Adams*, 872 F.2d at 929; *see Chevron,* 467 U.S. at 843.

13      The facts of this case illustrate the rationality of the recalculation concept as articulated

14  by the Commissioner at 20 C.F.R. § 404.290.   Computational flexibility is necessary to

15  account for a situation, such as this one, in which a claimant qualifies for Disability Insurance

16  Benefits in one Eligibility Year and then later is found entitled to those benefits from an

17  earlier year.   The year in which a claimant becomes eligible for benefits is crucial to the PIA

18  calculation under the Average Indexed Monthly Earning method.   As set forth above, different

19  indexing factors are applied to a claimant's earnings based on the year in which she became

20  entitled to benefits.   Without legal authority to recalculate a claimant's PIA in these

21  circumstances, the SSA would be prohibited from adjusting an initially valid PIA to account

22  for such "miscellaneous changes in status." 20 C.F.R. § 404.290(a)(4).

23      Plaintiff is mistaken when she urges that "it is a fact than any change or 'recalculation'

24  of PIA is by plain definition also a recomputation," and also that "Defendant's manipulation

25  of PIA under this subordinate CFR provision [20 C.F.R. § 404.290(a)] or any other implicit

26  theory to avoid the explicit prohibitions of Section 215(f)(1) enacted by Congress is an

27  encroachment on the legislative powers of Congress." (Tr. 199; Doc. # 20 at 9.)   The

28  distinction between a "recomputation" and a "recalculation" is not "mere semantics," as

1  Plaintiff contends, but is rather a rational interpretation of the Social Security Act to which
2  this court must defer.  (Tr. 199.)  The Commissioner's recalculation of Plaintiff's disability
3  PIA from  $943.50, to $910.50 did not violate 42 U.S.C. § 415(f)(1) and was in fact fully
4  authorized by 20 C.F.R. § 404.290(a)(4).

5         **C.**      **Retroactive Disability Payments**

6        Plaintiff also contends that, even if the SSA properly calculated her disability benefits
7  using a Primary Insurance Amount of $910.50, she was underpaid for the six-month period
8  between July 1998, and December 1998.  The final disability onset decision of the Appeals
9  Council entitled Plaintiff to Disability Insurance Benefits from July 1998, through November
10  2002, the last month before she became eligible for full Retirement Insurance Benefits in
11  December 2002.   Plaintiff's monthly DIB began at $910 because, according to SSA
12  regulations, all Social Security benefits are rounded down to the next lowest dollar.  (Tr. 37.)
13  The SSA incrementally increased the $910 monthly disability benefit with COLAs effective
14  each December and paid in January, as required by 42 U.S.C. § 415(i)(2)(A)(ii).  It should
15  also be noted that a payment by the SSA in a given month represents what Plaintiff was owed
16  in the prior month. (Tr. 131.)

17        As explained in the many notices sent by the SSA to Plaintiff, Plaintiff was owed and
18  paid $5,472 in DIB for July 1998, through December 1998 ($910 paid in August, September,
19  October, November and December plus $922 paid in January, 1999, which properly reflected
20  December's COLA).  (Tr. 131-32.)   Plaintiff's citation to the 2002 Form SSA-1099 showing
21  a total of $4,500.00 DIB paid in 1998 in support of her retroactivity argument is in error.
22  (Doc. # 20 at 6.)  This notice is keyed to the 1998 calendar year.  Therefore, it does not
23  account for the fact that the SSA paid Plaintiff's December 1998 monthly benefit, which was
24  to be disbursed with the appropriate COLA in January 1999, in full when it made its
25  retroactive disability award of $17,531 in August 2002. (Tr. 132; Tr. 144-45).  Plaintiff was
26  paid all of the disability payments to which she was entitled from July 1998, through
27  November 2002.

28

1          **D.      Due Process Violations by the SSA**

2          Plaintiff alleges that Defendant "engaged in dilatory tactics [by] refusing to respond

3    to inquiries and Freedom of Information requests," "obstructed justice by ignoring [her]

4    Request for Hearing," "created bogus and misleading" court exhibits, "concocted unsupported

5    legal theories and misstated the facts, [and] cited inapplicable legal authorities" in violation

6    of her Fifth Amendment right to due process. (Tr. 200; Doc. # 20 at 15-16.) The burden is

7    on the Plaintiff to support these allegations with specific evidence showing a genuine issue

8    as to a material fact.  Fed. R. Civ. P. 56(c).

9          Plaintiff's pleadings do not satisfy this admittedly heavy burden, even when construed

10   in the most liberal light possible.  The fundamental requirement of due process is the

11   opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v.*

12   *Eldridge*, 424 U.S. 319, 333 (U.S. 1976) (citation omitted).  When considering whether

13   unusual administrative delay violates a claimant's Fifth Amendment rights, "[t]here is no

14   talismanic number of years or months, after which due process is automatically violated."

15   *Coe v. Thurman*, 922 F.2d 528, 531 (9th Cir. 1990)  Administrative irregularities beyond the

16   delay alone are usually required.  *Id.*  In *Wright v. Califano*, 587 F.2d  345, 353-54 (7th Cir.

17   1978), the court noted that the reasonableness of administrative delays must be judged in light

18   of the resources that Congress has supplied to the agency for the exercise of its functions, as

19   well as the impact of the delays on the claimant's interests.  The passage of time alone is rarely

20   enough to justify a court's intervention in the administrative process, especially since

21   "administrative efficiency is not a subject particularly suited to judicial evaluation." *Id*; *see*

22   *also Fraga v. Smith*, 607 F. Supp. 517, 521 (D. Or. 1985) (citing *F.T.C. v. J. Weingarten, Inc.*,

23   336 F.2d 687, 691-92 (5th Cir. 1964)).

24         The court has carefully reviewed the administrative record and found no evidence of

25   "dilatory tactics" or other bad-faith conduct rising to the level of a due process violation.  For

26   example, Plaintiff made her first documented request for information about the disability

27   Primary Insurance Amount calculation on August 29, 2002.  (Tr. 118.)  The record shows that

28   Plaintiff made several more such requests, including under the Freedom of Information Act,

1   5 U.S.C. § 552.  On December 18, 2002, Defendant responded to Plaintiff's requests by

2   providing a thorough explanation of the relevant retirement and disability monthly benefit

3   calculations. (Tr. 125.)  This notice gave Plaintiff all of the information she needed to verify

4   that the SSA correctly calculated her Disability Insurance Benefits.  Plaintiff's due process

5   rights were not violated by a delay of less than four months between the time that she

6   requested the explanation and the date she received it.

7          Not satisfied with the explanations proffered by the SSA, Plaintiff requested a hearing

8   before an ALJ to resolve her computational dispute on March 31, 2003. (Tr. 149.)  When the

9   SSA did not promptly schedule a hearing, Defendant opted to waive her right to hearing and

10  requested a decision on the record in a letter dated December 10, 2003. (Tr. 197-200.)  ALJ

11  Buls rendered his on-the-record decision on January 20, 2005, which was adopted in full as

12  the final decision of the Commissioner on September 15, 2005. (Tr. 11-13; Tr. 4-6.)  Over

13  two years passed between Plaintiff's initial request for a hearing and the issuance of the

14  Commissioner's final decision.  This delay did not violate Plaintiff's due process rights, even

15  when viewed in the context of Plaintiff's long-running efforts to obtain a satisfactory

16  explanation of the SSA's disability computations.  An elderly and disabled person of few

17  means, Plaintiff obviously struggled in the face of what seemed to her to be interminable

18  administrative delay and bureaucratic insouciance.  Nevertheless, the record is barren of any

19  evidence of wilful obstruction of justice, bad faith, or any other unlawful conduct on the part

20  of the Commissioner.  The mere passage of time, without more, does not constitute a due

21  process violation.  *Coe*, 922 F.2d at 531.

22         Finally, Plaintiff contends that her due process rights were violated when the SSA

23  refused to allow her to proceed directly to this court without first exhausting her

24  administrative remedies as required by 42 U.S.C. § 405(g) and 20 C.F.R. § 404.900.

25  "Exhaustion," explained the Supreme Court, "is required because it serves the twin purposes

26  of protecting administrative agency authority and promoting judicial efficiency." *McCarthy*

27  *v. Madigan*, 503 U.S. 140, 145 (1992); *see Weinberger v. Salfi*, 422 U.S. 749, 765 (1975).

28  The exhaustion of remedies requirement may be waived at the Commissioner's discretion, if

1    she is satisfied that no further administrative review is warranted. *Matthews*, 424 U.S. at 328.

2    The exhaustion requirement is properly waived when, for example, further administrative

3    review would be futile because the only issue in contention is constitutional in nature and

4    therefore beyond the Commissioner's competence to decide.  *Id*.; *see also New York v.*

5    *Sullivan*, 906 F.2d 910 (2d Cir. 1990) (waiver appropriate to avoid irreparable injury).

6    Waiver is not required by long delays in the adjudication of the purest questions of law, even

7    when, as Plaintiff contended in her October 20, 2003 letter on the subject, "any further attempt

8    to resolve these matter though Social Security Administration processes would simply be a

9    waste of everyone's time."  (Tr. 194); *see Calvert v. Callahan*, 990 F. Supp. 1280, 1282 (D.

10   Kan. 1997) (a five-year delay between the filing of a Supplemental Security Income claim and

11   the rendering of an initial decision not sufficient to prove that exhaustion would be futile).

12   The denial of Plaintiff's request for a waiver of the administrative exhaustion requirement did

13   not violate Plaintiff's due process rights.

14              **E.      Due Process Violations by ALJ Buls**

15              Plaintiff next argues that ALJ Buls' January 20, 2005 decision, which is the

16   Commissioner's final decision in this case, should be reversed because it was rendered in

17   violation of Plaintiff's due process rights.  Plaintiff believes that "throughout [her] case [ALJ

18   Buls] not only abdicated [his] [legal responsibilities] by simply deferring to Defendant's

19   explanations but condoned and participated in and perpetuated the bad faith, dilatory tactics

20   and obfuscation, obstruction of justice, and malfeasance in office, if not fraud."  (Doc. # 20

21   at 4.)  Plaintiff specifically contends that the ALJ committed reversible error by failing to

22   recuse himself at the outset on the basis of his prior involvement in Plaintiff's case, ignoring

23   material evidence and  misinterpreting applicable law.  (Doc. # 20 at 10-15; Doc. # 30 at 8.)

24   ALJ Bul's decision is affirmed in full.

25              As an ALJ for the Social Security Administration, Norman R. Buls has an obligation

26   to develop the record fully and fairly, a duty that must be discharged by "look[ing] fully into

27   the issues, question[ing] [Plaintiff] and the other witnesses, and accept[ing] as evidence any

28

1   documents that are material to the issues."  20 C.F.R. § 404.944; *Brissette v. Heckler*, 730

2   F.2d 548, 549 (8th Cir. 1984).  The ALJ's dual role as judge of law and trier of fact also

3   imposes duties of impartiality and basic fairness upon him.  *Byrd v. Richardson*, 362 F. Supp.

4   957, 963 (D. S.C. 1973).  In light of these obligations, an ALJ must disqualify himself from

5   a case if he believes that he is prejudiced as to any party, will be unable to give the claimant

6   a full and fair hearing, or believes that his participation in the case would create an appearance

7   of impropriety.  20 C.F.R. § 404.940; Hr'gs, Appeals and Litig. Law Man. ("HALLEX") I-2-

8   160(A).

9        Plaintiff believes that ALJ Buls was prejudiced against her when he rendered his

10  January 20, 2005 decision in favor of the SSA.  (Doc. # 20 at 17.)  In support of this

11  allegation, Plaintiff notes that ALJ Buls previously rejected Plaintiff's disability application

12  and, on remand from the Appeals Council, set an unfavorable disability onset date of January

13  2000, instead of the January 1998 date she urged.  (*Id.*)  Although Plaintiff found ALJ Buls'

14  prior decisions to be "not very flattering," not least because of the "devious means" and

15  "lie[s]" he allegedly relied upon to reach his conclusions, there is no suggestion in the record

16  that ALJ Buls' prior involvement in this case actually deprived Plaintiff of her right to a

17  neutral decision maker.  (Doc. # 8 at 16.)  The ALJ's failure to explicitly recognize his role

18  in the prior proceedings is not, as Plaintiff contends, indicative of chicanery or bias against

19  her:  this fact is self-evident from the administrative record to which he cites.  A similarly

20  situated district court held that an ALJ's denial of disability benefits to a claimant three times

21  in the past did not show bias against the claimant that would entitle him to a hearing on

22  remand before a different ALJ.  *Alfano v. Bowen*, 1988 WL 23542 (E.D.N.Y. 1988).  This

23  court similarly concludes that ALJ Buls' prior adjudication of Plaintiff's disability application

24  did not disqualify him from rendering a decision in the present matter.

25        Construing Plaintiff's pleadings liberally, Plaintiff might also be heard to contend that

26  ALJ Bul's familiarity with the case precluded him from adequately resolving credibility issues

27  essential to her case.  *See Boyle v. Harris*, 506 F. Supp. 294 (D. Pa. 1980).  No colorable due

28

1   process claim can lie on this ground, however, as Plaintiff waived her right to a hearing, and

2   Plaintiff herself avers that this case involves a pure question of law to which credibility

3   determinations are irrelevant.  Nor has Plaintiff directed the court's attention to any offensive

4   or unprofessional conduct on the part of the ALJ–such as condescending, coercive,

5   intimidating and totally irrelevant questioning–that, in light of the claimant's *pro se* status,

6   could throw the integrity of an ALJ's decision into doubt and justify remand to a different

7   decision maker.  *Ventura v. Shalala*, 55 F.3d 900 (3d Cir. 1995).

8        Finally, Plaintiff contends that ALJ Bul's assignment to her disability PIA dispute

9   contradicts the language of the SSA's own publication on administrative hearings, which

10  promised that "[t]he [ALJ] has not had any part in your case."  (Doc. # 20 Ex. B.)  This

11  statement refers only to the fact that the Office of Hearings and Appeals ("OHA"), which has

12  exclusive competence to hear and decide appeals from social security benefit decisions,

13  operates independently of the larger SSA bureaucracy.  For example, once the OHA assigns

14  a case to a particular ALJ to decide, only the ALJ so selected may disqualify or recuse himself

15  from the case; the SSA has no authority to remove him on its own accord.  HALEX I-2-

16  160(A).  The ALJ to whom the appeal is assigned "has not had any part in [a claimant's] case"

17  in the sense that the ALJ approaches the matter as a neutral decision maker, unconstrained by

18  the SSA's institutional preferences and obligated to develop and review the record to arrive

19  at his own unprejudiced conclusions.  *Id.*  While Plaintiff obviously does not agree with the

20  legal conclusions drawn from the ALJ's "careful[] review [of the] documentary evidence of

21  record," she nevertheless received all the process to which she was due.  (Tr. 12.)

22       Contrary to Plaintiff's assertions, ALJ Buls was not legally required to disqualify

23  himself from this matter because of his involvement in earlier chapters of this long-running

24  dispute.  This court's decision upholding the SSA's computation of separate disability and old-

25  age Primary Insurance Amounts, as well as its deference to the Commissioner's articulation

26  of the PIA "recalculation" concept, fully disposes of Plaintiff's remaining due process

27  arguments.  The ALJ's opinion, though terse, resolved the issues by applying the appropriate

28

law to the relevant facts.  ALJ Bul's ruling, which the Commissioner adopted as her final decision, is supported by substantial evidence and not legally erroneous and is therefore affirmed.

### F.     Costs

Plaintiff is not entitled to costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, or under any other law, because she did not ultimately prevail in this action.

### G.     Unserved Defendants

Plaintiff lists numerous Defendants in her pleadings in addition to the sole Defendant named in this Order, Jo Anne B. Barnhart, Commissioner of Social Security.  Plaintiff makes no allegations as to these additional Defendants that are different from the assertions fully disposed of by this Order.   Plaintiff caused her Summons and Complaint to be  served exclusively upon Jo Anne B. Barnhart, Commissioner of Social Security, Paul K. Charlton, U.S. Attorney, and the Office of the United States Attorney General in Washington, D.C. (Aff. of Service by Certified Mail, Doc. # 6.)  Federal Rule of Civil Procedure 4(m) authorizes this court to dismiss Plaintiff's action without prejudice as to any Defendant not served with the Summons and Complaint 120 days after November 14, 2005, the date on which Plaintiff filed her Complaint.  Plaintiff's action will therefore be dismissed, without prejudice, as to all such named, unserved Defendants.  The court notes, however, that this disposition fully adjudicates all of Plaintiff's claims.  Therefore, Plaintiff may not bring a new action against any unserved Defendant relating to the claims herein decided against her.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment, Doc. # 20 is denied.

IT IS FURTHER ORDERED that Defendant's Cross-Motion for Summary Judgment, Doc. # 28, is granted.

IT IS FURTHER ORDERED that the action shall be dismissed without prejudice as to all Defendants other than Defendant Barnhart pursuant to Fed. R. Civ. P. 4(m).

- 17 -

1    IT IS FURTHER ORDERED that the clerk enter judgment in favor of Defendant

2  Barnhart and that Plaintiff take nothing.  The clerk shall enter judgment dismissing all other

3  Defendants without prejudice.  The clerk shall terminate this action.

4    DATED this 7th day of November 2006.

5

6

7    _____
       Neil V. Wake
8       United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28